Filed 6/27/25  Marriage of Clark CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

In re Marriage of DEBORAH L. and
EDWARD L. CLARK, JR.

DEBORAH L. CLARK,

    Respondent,

        v.

EDWARD L. CLARK, JR.,

    Appellant.

G064157

(Super. Ct. No. 05D000275)

ORDER MODIFYING OPINION;
NO CHANGE IN JUDGMENT

It is ordered that the opinion filed June 25, 2025, be modified as follows:

The caption is MODIFIED to reflect that the correct superior court case number is 05D000275.

There is no change in the judgment.

SANCHEZ, J.

WE CONCUR:

MOORE, ACTING P. J.

DELANEY, J.

Filed 6/25/25  Marriage of Clark CA4/3 (unmodified opinion)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Marriage of DEBORAH L. and EDWARD L. CLARK, JR. | |
| DEBORAH L. CLARK, | G064157 |
| Respondent, | (Super. Ct. No. 05D00275) |
| v. | O P I N I O N |
| EDWARD L. CLARK, JR., | |
| Appellant. | |

Appeal from orders of the Superior Court of Orange County, Yolanda V. Torres, Judge. Affirmed. Motion to dismiss appeal and vacate order. Denied. Emergency motion to correct legal error. Denied.

Edward L. Clark, Jr., in pro. per., for Appellant.

No appearance for Respondent.

\*       \*       \*

## INTRODUCTION

Edward L. Clark, Jr.,[1] a pro. per. litigant, is appealing from an order entered on March 14, 2024 (the March 2024 Order) and an order entered on May 3, 2024 (the May 2024 Order) in this family law matter. The May 2024 Order denied Edward's motions to set aside and vacate the March 2024 Order. The March 2024 Order denied requests for order filed by Edward on February 1, 2024 (the February RFO) and on February 15, 2024 (the February 15 RFO). The February RFO requested an order entering into the record a debt settlement agreement from 2016 and a stipulation from 2021. The February 15 RFO requested the court to correct its website to reflect that the February RFO was to be heard at the same time as a request for order brought by Edward's ex-wife, Deborah L. Clark.[2]

Edward is no stranger to this court. This is the third appeal by which he is, in effect, trying to undo an order made in 2018 (the 2018 Order) finding he still owed Deborah nearly $500,000 in equalization payments and ordering him to pay in accordance a marital settlement agreement from 2006 which was made part of the marital dissolution judgment. In the first appeal, (*In re Marriage of Clark* (Dec. 2, 2020, G058030/G058285 [nonpub. opn.] (*Clark I*)), we affirmed the trial court's order denying Edward's motion under Code of Civil Procedure section 473 to set aside the 2018 Order. In the course of affirming, we rejected Edward's argument that at the time of trial in 2018

_____

[1] As is customary in family law matters, we refer to the parties by first name for convenience and to avoid confusion.

[2] The February 15 RFO is not in issue in this appeal. The matter was resolved and the family court deemed that request for order to be "complete."

the family court no longer had jurisdiction and Edward's claim that he had not stipulated to have a commissioner hear the matter.

Before the opinion in *Clark I* was issued, Edward filed a declaratory relief action against Deborah in civil law court. In the civil lawsuit, Edward filed a "joint stipulation to settle case" (the Joint Stipulation) and a debt settlement agreement dated March 21, 2016 (the Debt Settlement Agreement).

Back in family law court, Edward requested orders to dismiss the dissolution proceeding. He contended the settlement and dismissal of the civil law case mandated dismissal of the family law case. In the second appeal (*In re Marriage of Clark* (Sept. 20, 2023, G061697) [nonpub. opn.] (*Clark II*), we affirmed the family court's order denying those requests. We tried, as several judicial officers had, to explain to Edward that any modification of a family court judgment must be made in family court under family court rules. We concluded the family law court had correctly ruled that the civil settlement had no effect in family law court.

Edward tried once again to get the marital dissolution case dismissed based on the Joint Stipulation filed in the civil law case. He brought the February RFO, which requested an order entering the Debt Settlement Agreement and the Joint Stipulation into the record. Edward apparently believes that if he keeps on filing requests for orders and motions to vacate and pursuing appeals challenging their denials he eventually will find a court willing to overturn the 2018 Order. He has not succeeded here, and risks being declared vexatious litigant. We affirm the March 2024 Order and the May 2024 Order.

BACKGROUND

I. FACTS

We recite the pertinent facts from *Clark I.*

"Edward and Deborah were divorced in 2007. The marital settlement agreement, which became part of the judgment in 2006, provided that, in lieu of a lump-sum equalization payment to Deborah, Edward would pay her $250,000 at the time and the rest ($1.7 million) in installments of $9,227 per month over 30 years, at five percent interest. The parties waived spousal support. Deborah later testified that the monthly payment was her sole source of income.

"Edward presented the court with an acknowledgement of satisfaction of judgment (full) ostensibly signed by Deborah on January 14, 2013, and recorded the same day. The register of actions in the divorce case does not reflect the filing of an acknowledgement of satisfaction of judgment or a demand for the filing of an acknowledgement. Notwithstanding the acknowledgement of satisfaction of judgment, Edward continued to make the monthly payments mandated by the marital settlement agreement/judgment until 2016.

"In 2016, Edward still owed Deborah $1.3 million in equalization payments. He told Deborah he could no longer make the monthly payments because he found himself in financial difficulties. If she would sign some papers, he could take $1 million in equity out of his house and put it in her bank account, then use $150,000 of it to pay his taxes. She could live on the remaining $850,000 for the estimated two years that it would take Edward to reorganize his finances. He would then resume the monthly payments until the balance — some $300,000 plus the $150,000 he took for taxes — was

4

finally paid off. Deborah agreed, largely because Edward told her that if she did not, she would get nothing.

"Deborah signed a debt settlement agreement on March 21, 2016. Under the terms of the debt settlement agreement, Deborah was supposed to receive the entire $1 million. Edward nevertheless took $150,000 of that amount, pursuant to the previously made oral agreement. He sent two text messages to Deborah acknowledging the agreement to pay her the balance of the equalization payment.

"In 2017, Deborah called Edward to find out when he was going to resume the monthly payments, assuming that his financial problems would be on the way to resolution. Edward told Deborah he was not going to pay her. He might repay her the $150,000 he took for his taxes, but nothing else.

"Deborah filed a request for order (RFO) on April 17, 2018, in the divorce case, asking for an order to enforce the judgment — in particular the remaining monthly payments. The moving papers included the debt settlement agreement and the acknowledgement of satisfaction of judgment as exhibits and a declaration from Deborah explaining how she had come to sign them. The RFO was personally served on Edward on May 7, 2018. Edward filed an opposition on August 22, 2018, denying that he owed Deborah any more money and giving his version of events.

"The case was tried to a family law commissioner over two days, September 18 and October 12, 2018. Both Edward and Deborah testified. At the end of trial, the court ruled in Deborah's favor. It found that she had been due $488,500 as of April 30, 2016, per the marital settlement agreement. The components of this amount were (1) the balance of the monthly payments due under the marital settlement agreement/judgment of 2006 ($388,500) and (2)

5

the $150,000 that Edward had taken from the $1 million to pay his taxes. In other words, Edward had to pay the full amount agreed to in the marital settlement agreement/judgment and was not entitled to discount that amount by means of the debt settlement agreement and the satisfaction of judgment. He received a credit for the $850,000 Deborah received from the home equity loan. But he had to pay the rest ($525,137, including interest as of October 2018) in monthly installments, as mandated by the original judgment." (*Clark I, supra*, G058030/G058284, at pp. *2-*5.)

## II. *Clark I*

Edward did not appeal the family court order. Instead, he appealed from an order denying a motion he made under Code of Civil Procedure section 473 to set that order aside.

We take up the narrative from *Clark II*:

"We affirmed the denial of the set-aside motion, pointing out that a motion under this code section was not the proper vehicle to complain about the evidence presented at trial. ([*Clark I*], *supra*, G058030/G058284, at p. *1.) We observed that the record belied one of his contentions — that he had not stipulated to the matter being heard by a commissioner. ([*Clark I*]*supra*, G058030/G058284, at p. *10.) We also held that because the matter involved the enforcement of an executory family court judgment, the family court had jurisdiction over the matter. ([*Clark I*]*, supra*, G058030/G058284, at p. *2.)

"One of Edward's contentions in the 2018 trial was that, Deborah having signed a satisfaction of judgment in 2013, the divorce case was over. If Deborah wanted to complain about his failure to pay her the remainder of her equalization payments, then she had to sue him in civil court and serve a summons and complaint on him. We explained in [*Clark I*] that this contention was incorrect; under Family Code section 290, the family court

had the authority to enforce a family court judgment. ([*Clark I*]*, supra*, G058030/G058284, at p. *15.) [*Clark I*] was issued on December 2, 2020." (*Clark II, supra*, G061697, at pp. 5-6.)

### III. *Clark II*

We continue the narrative from *Clark II*:

"Edward filed a declaratory relief action in civil court against Deborah on August 2, 2019. He made the same allegations regarding the 2013 satisfaction of judgment and the 2016 debt settlement agreement that he had made during the 2018 trial in the family court.[4] The civil suit resulted in a settlement and a dismissal in July 2021.

"On March 22, 2022, Edward filed a request for order (RFO) in the family court. He checked the 'other' relief box and 'specif[ied]' the following: 'on. Attached Ex A; Satisfaction of Judgment filed by Peti[ti]oner in Orange county 1/14/2013, Ex B Contract Deb' [¶] . . . [¶] 'attached hereto and incorpoated [sic] herein by reference is [¶] Exhibit "A": Proof of Service 15 - day notice [¶] Exhibit "B" Contract entered (stipulation) witnessed and entered into the record by a superior court judge. [¶] Exhibit "C" satsfaction [sic] of judgment entered by Peti[ti]oner in the county of orange 1/14/2013 [¶] Exhibit "D" Contract entered and executed between the parties 3/21/2016.' The supporting declaration stated, 'I, Respondent, served Peti[ti]oner 15-day notice to enter satisfaction of judgment for case 05D000275 pursuant to ccp

---

"[4] As we pointed out in our prior opinion, the satisfaction of judgment was recorded but never filed with the court. Deborah had never filed an acknowledgement of satisfaction of judgment under Code of Civil Procedure section 724.030, and Edward had never filed a demand that she do so under section 724.050. The satisfaction of judgment was therefore unenforceable. ([*Clark I*]*, supra*, G058030/G058284, at p. *14.)

724.030 and contract (via stipulation) entered and witnessed by a superior court judge July 12, 2021. To date Petitioner has failed to file satisfaction of judgment as requested.' The register of actions in the dissolution case does not reflect the filing of a demand for acknowledgement of satisfaction of judgment under Code of Civil Procedure section 724.050. Deborah did not file an opposition to the RFO.

"Edward's RFO was heard on June 3, 2022. Deborah did not appear. The court ruled that the civil court had no jurisdiction over family court orders and denied the motion.

"Although it is not clear from the RFO itself what Edward wanted the court to do, it appears from the oral argument that he wanted the court to dismiss the dissolution case pursuant to the stipulation and settlement entered in the civil action, now dismissed. The judge patiently tried to explain that what happened on the civil side had no bearing in family court. The parties had to use family law procedures in family court if they wanted a ruling from a family court judge. This explanation had no effect.

"Edward filed another RFO on June 9, 2022. This time the relief requested was 'Motion to Amend order entered 6/3/2022 to dismiss case 05D000275 in compliance with California rules of the court Rule 3.1385 (B)[.]' Edward attached an 'objection to order entered 6/3/2022' and a 'notice of motion and motion to amend order entered June 3, 2021 [sic].' The notice stated that Edward would move to amend the court's order refusing to dismiss the dissolution action pursuant to 'California Rules of the Court 3.1385 (B). order entered 6/2/2022 [sic] pursuant to CCP 1008(a) on the grounds that said ruling was created with and entered based on Extrinsic Fraud, self serving to the court fabricating evidence in support of various judicial officers alleged to be engaged with racketeering and corrupt business

8

practices in federal court.' After accusing the court of fraud and other misdeeds, Edward stated that the court 'must dismiss the entire case 45-days after notice of settlement,' pursuant to California Rules of Court, rule 3.1385.5 Edward then continued to accuse the court of fraud 'designed to fabricate, deceive and create evidence.' Most of the remaining argument is either unintelligible or completely untethered to anything in the record . . . or both. One thing is clear, however. Edward accuses several judicial officers of fraud in refusing to dismiss the dissolution case.

"The court heard this second RFO on July 22, 2022. The court deemed the motion a motion for reconsideration under Code of Civil Procedure section 1008. It denied the motion because Edward had failed to provide any new or additional facts. (Code Civ. Proc., § 1008, subd. (a).) During the hearing Edward berated the court for not following California Rules of Court, rule 3.1385 and dismissing the dissolution case.[6]

"Edward has appealed from the orders denying his RFOs entered on June 3 and July 22, 2022." (*Clark II, supra*, G061697 at pp. 6-8, fn. 5 omitted.)

In *Clark II*, we affirmed the orders entered on June 3 and July 22, 2022. We explained:

"The civil court and the family court are separate domains. They have separate judges, who have no working relationship with each other. Although the Code of Civil Procedure is sometimes used in family court, family law has its own procedures and rules. When there is a family law rule,

---

"[6] [Edward]: And the rule specifically states, 'the court must dismiss.' [¶] So I'm not sure what part of that rule the court doesn't understand."

the family court uses that rule and not the Code of Civil Procedure. The California Rules of Court also has a separate section of rules governing family law matters: the 5 series. [¶] That is why a civil court has no jurisdiction over a family law matter. Edward was free to sue Deborah in civil court. But nothing occurring there had any effect whatsoever on the dissolution case in family court." (*Clark II, supra*, G061697 at pp. 10-11.)

"[¶] . . . [¶]

"The *only* person who can alter a family court judgment is a family court judge. *The parties themselves cannot do it, either by contract or by stipulation.* [Citation.] They can ask the family court judge to do it, by initiating process in family court, but they must follow the procedures set out for this purpose in family law, without reference to the outcome of any civil suit. A ruling or disposition from civil court cannot form the basis for a family court order." (*Clark II, supra*, G061697 at p. 13.)

"The family court correctly denied Edward's first RFO on June 3, 2022, regardless of what it entailed, because there was no legal basis for relief. He never filed a request for an order requiring Deborah to file an acknowledgement of satisfaction of judgment, and it would not matter if he had made a proper request for such an order. As part of the trial in 2018, the commissioner found that the acknowledgement of satisfaction of judgment was without effect, and Edward never appealed from that order. If what Edward wanted was to have the dissolution case dismissed, the court correctly denied that request as well. The sole basis for Edward's RFO was a stipulation [the Joint Stipulation] and settlement agreement [the Debt Settlement Agreement] that had no force in a family law case." (*Clark II, supra*, G061697 at p., 13.)

A review of the docket for *Clark II* reveals that Edward filed a

10

petition for rehearing, a petition for review by the California Supreme Court, and a petition for writ of certiorari to the United States Supreme Court. All were denied.

IV. The Present Case

In October 2023, Deborah filed a request for an order to "Enter Debt Settlement Agreement." Deborah's request for an order did not request any other relief.

In the February RFO, Edward also requested an order to enter the Debt Settlement Agreement and the Joint Stipulation into the record. In a supporting memorandum of points and authorities, Edward asserted: "A dispute exist[s] between [Edward] and this court regarding the undisputed fact this court continues its effort to validate a VOID order issued by Commissioner Barry Michaelson. . . . It goes without saying, [Edward] argues all of this court[']s efforts to validate a VOID order by refusing to comply with both parties litigants request has been egregious judicial misconduct in [an] effort to fabricate judicial immunity. . ." Edward repeated the same arguments that had been rejected in *Clark I* and *Clark II*, including: (1) the 2018 Order was void because Edward did not stipulate to have a commissioner hear the matter; (2) the family law court had lost subject matter jurisdiction, (3) the family law court had to dismiss the September 2018 order because it was obtained in "Breach" of the Debt Settlement Agreement, and (4) under California Rules of Court rule 3.1385, the family law court had to dismiss the dissolution proceeding upon notification of the settlement of the civil law action.

Although the February RFO did not request any particular relief, in the supporting memorandum of points and authorities, Edward stated that he "request[s] the court on its own motion to comply with the law, take

11

actions as requested by both parties putting finally and forever case 05D000275 to rest in Family Court." In other words, Edward wanted the family court to vacate the 2018 Order and dismiss the marital dissolution case.

A hearing on the February RFO and Deborah's RFO was held on March 14, 2024. Deborah did not appear. The court announced its tentative was to deny the February RFO. The court explained that issues regarding the February 2018 order and the Debt Settlement Agreement had been adjudicated and affirmed in *Clark I*, and issues regarding the Joint Stipulation had been adjudicated and affirmed in *Clark II*. Edward responded by repeating the same arguments that previously had been rejected by the family court and by us in *Clark I* and *Clark II*: the family court "never had subject matter jurisdiction," he had not stipulated to having a commissioner preside over the 2018 trial, the court was compelled to dismiss the dissolution case due the joint stipulation, and the court did not have "authority to legitimize a void judgement." Edward accused the court of "refusing" to follow the law. The court confirmed its tentative as the order of the court.

True to form, Edward filed a motion to set aside the March 2024 Order and a separate motion to vacate the March 2024 Order. He again argued the 2018 order was void and the family law court did not have subject matter jurisdiction. He also argued the opinion in *Clark I* "is not on the merits written to prejudice appella[nt]" and the opinion in *Clark II* is "a Void opinion."

The family law court heard Edward's two motions on May 3, 2024. The court expressed concern that Edward was making repetitive motions. The court construed the motion to vacate and the motion to set aside

12

as a motion for reconsideration under Code of Civil Procedure section 1008 and denied them on the ground Edward had not presented new facts or evidence. The court explained, again, that the 2018 Order had been affirmed by the court of appeal. While declining to make a vexatious litigant ruling, the court stated it would be looking into whether Edward should be declared to be one. Edward then launched into a rant about how the 2018 Order, our opinions in *Clark I* and *Clark II*, and any ruling adverse to him were void.

The May 2024 Order formally denied Edward's motion to set aside and motion to vacate. The order states: "Court notes Motions are frivolous. [¶] Respondent [Edward] may be vexatious litigant. Court will review Civil Code of Procedure [§§] 391.1 and 391.7."

## DISCUSSION

### I. APPEALABILITY

We first determine whether the orders from which Edward appeals are appealable orders. "[A] reviewing court lacks jurisdiction on direct appeal in the absence of an appealable order or judgment." (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal. 4th 15, 21; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126 ["The existence of an appealable judgment is a jurisdictional prerequisite to an appeal"].)

The February RFO requested an order to enter the Debt Settlement Agreement and the Joint Stipulation into the record. However, what the February RFO was in effect requesting, was an order setting aside the February 2018 Order and dismissing the dissolution action based on the Debt Settlement Agreement and the Joint Stipulation. The February RFO thus sought an order affecting or relating to the judgment. (*In re Marriage of Olson* (2015) 238 Cal.App.4th 1458, 1462.) The March Order, which denied

13

the February RFO, is therefore appealable under Code of Civil Procedure section 904.1, subdivision (a)(2) as a postjudgment order.

The family court treated Clark's motion to set aside and motion to vacate the March 2024 Order as a motion for reconsideration. The May 2024 Order, which denied those motions, is not separately appealable but is reviewable as part of an appeal from the March 2024 Order. (Code Civ. Proc., § 1008, subd. (g).)

## II. EDWARD'S MOTIONS ON APPEAL

Edward has filed two motions: (1) a motion requesting us to dismiss this appeal and vacate the 2018 Order and (2) an "emergency motion requesting the court to correct legal error." We issued orders stating those two motions would be decided in conjunction with the decision on appeal.

Both motions argue that the 2018 Order is void and, therefore, we do not have subject matter jurisdiction over this appeal. In the emergency motion to correct legal error, Edward goes so far as to say that our order regarding deciding the motion to dismiss in conjunction with the appeal "contradicts the rule of law [as] well as established precedent."

The motions are frivolous. We have jurisdiction over the appeal because *Edward* filed notices of appeal from orders which we have concluded are directly appealable. Edward's request that we dismiss the appeals and vacate the 2018 Order makes no sense: If we lack jurisdiction, as Edward claims, then we would have no ability to vacate the 2018 Order or any other order of the family court.

## III. EDWARD'S APPEAL IS FRIVOLOUS

Edward's makes many assertions in his long and rambling brief. The gist of his arguments is the March 2024 Order and the May 2024 Order are void because the 2018 Order is void and because the family court refused

14

to follow the law by not dismissing the marital dissolution matter based on the Debt Settlement Agreement and the Joint Stipulation. He also claims the opinions in *Clark I* and *Clark II* are void and were used by the family court "as a shield to cover for judicial misconduct."

Edward's appeal from the March 2024 Order and the May 2024 Order is frivolous. Several judicial officers as well as the opinions in *Clark I* and *Clark II* have tried to explain to him why the 2018 Order is valid and binding and why the Debt Settlement Agreement and Joint Stipulation cannot be given effect in the marital dissolution matter. None of those attempts was successful, but we'll try one last time.

We start with the principles of res judicata and collateral estoppel. Res judicata or claim preclusion "prevents relitigation of entire causes of action." (*Samra v. Matar* (2018) 5 Cal.5th 322, 326.) Claim preclusion arises when "'a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit.'" (*Id.* at p. 327.) Collateral estoppel or issue preclusion "prevents 'relitigation of previously decided issues,' rather than causes of action as a whole." (*Ibid.*) Issue preclusion applies "'(1) after a final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.'" (*Ibid.*)

Deborah's 2018 request for order asked the family court to enforce the marital dissolution judgment by requiring Edward to make the remaining monthly payments. Deborah's request was tried on the merits. After hearing testimony and reviewing exhibits, the family court issued the 2018 Order in which the court ruled in Deborah's favor and found she had been due $488,500 from Edward as of April 30, 2016. The court found

15

Edward had to pay the full amount agreed upon in the marital settlement agreement/dissolution judgment and was not entitled to offset that amount by means of the Debt Settlement Agreement and the satisfaction of judgment purportedly signed by Deborah. In the 2018 Order, the family court found that Deborah "was induced and convinced to enter [the Debt Settlement Agreement] based upon the representations that she would receive all of the amounts due with credit for the $850,000 paid as a result of the refinance."

In *Clark I*, we affirmed the family court. Edward exhausted all appellate avenues to challenge the 2018 Order, and lost. The 2018 Order thus is res judicata. That means the 2018 Order is valid and binding and bars Edward from ever relitigating the claim that the Debt Settlement Agreement supersedes or modifies the marital dissolution judgment. The family court's finding that Edward owed Deborah $488,500 as of April 30, 2016 has the force of issue preclusion. That issue was decided against Edward, and he is barred from relitigating it ever again.

In *Clark I*, we rejected Edward's claim that he had not stipulated to a Commissioner hearing his case. We concluded that Edward had consented by his conduct to a decision by the commissioner. (*Clark I, supra*, G058030/G058284, p. *12.) We also concluded the family court continued to have jurisdiction because (1) the divorce judgment was still executory, that is, Edward not yet complied with his obligations under it, (2) Deborah, as judgment creditor, had not filed the acknowledgment of satisfaction of judgment she purportedly signed and Edward had not made a demand that she do so, and (3) the family court had jurisdiction to enforce the marital dissolution judgment against Edward. (*Id*. at pp. **13-14)

Those conclusions are subject to issue preclusion as well as another principle called law of the case. Under law of the case, when an

16

appellate court states in an opinion a principle or rule of law necessary to its decision, that principle or rule becomes law of the case and must be adhered to in the lower court and upon subsequent appeal. (*Nelson v. Tucker Ellis, LLP* (2020) 48 Cal.App.5th 827, 837.) The rule of law of the case bars repeated appellate review of the same issue in a single case. (*Ibid.*)

As a consequence, the issues of whether Edward stipulated to a commissioner and whether the family court had jurisdiction in 2018 have been foreclosed against him. He is barred from raising those issues again in any court. The principles of claim preclusion, issue preclusion, and law of the case thus conclusively and permanently bar Edward from relitigating the issues tried and resolved by the 2018 Order and affirmed in *Clark I.* Edward might not like the 2018 Order, but it is not void and he is bound by it.

By refusing Edward's request to dismiss the marital dissolution based on the Debt Settlement Agreement and the Joint Stipulation, the family court was upholding the law, not refusing to follow it as Edward contends. Claims arising out of a family law case, whether prejudgment or postjudgment, must be heard in the family law court, not the civil law court. (Hogoboom et al., Cal. Practice Guide: Family Law (The Rutter Group 2024) ¶ 3:22.5, p. 3-17, citing *Neal v. Superior Court* (2001) 90 Cal.App.4th 22, 25-26.) "[F]amily law cases should not be allowed to spill over into civil law. . . ." (*Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 393.) Even if a family law matter can be reframed in terms of a civil law action, the family law court retains jurisdiction. (*Neal v. Superior Court, supra,* 90 Cal.App.4th, pp. 25-26.)

Edward tried to circumvent the 2018 Order by filing and then purporting to settle the civil law case by means of the Joint Stipulation. The civil law case made the same allegations regarding the 2013 satisfaction of

17

judgment and the 2016 debt settlement agreement that he had made during the 2018 trial in family court. However, Edward was not permitted to evade the family court's continuing jurisdiction by recasting his claims as civil law matters. (*Pont v. Pont* (2018) 31 Cal.App.5th 428, 442.) Once the family law court acquired jurisdiction and retained continuing jurisdiction over Edward and Deborah's marital dissolution and property division, no other department of the superior court could make an order adversely affecting the family court's judgment and rulings. (*McMillin v. Eare* (2021) 70 Cal.App.5th 893, 919.)

Edward's repeated assertion that California Rules of Court, rule 3.1385(b)[3] compelled dismissal of the marital dissolution action and the 2018 Order is frivolous for several reasons. First, the Joint Stipulation requested the civil law court to enter judgment pursuant to the terms of the stipulation, which included an agreement that the Debt Settlement Agreement was "Valid" and "enforceable" and the 2018 Order was "not enforceable" and "void." In *Clark II*, we concluded the civil law court had no jurisdiction to enter a judgment making those findings, which had been determined against Edward by the family law court and affirmed in *Clark I*. (See *McMillin v. Eare, supra*, 70 Cal.App.5th at p. 919; *Burkle v. Burkle, supra*, 144 Cal.App.4th at pp. 391-392.) That determination is binding on Edward.

We also concluded in *Clark II* that the Joint Stipulation had no

---

[3] Rule 3.1385(b) states: "Except as provided in (c) or (d), each plaintiff or other party seeking affirmative relief must serve and file a request for dismissal of the entire case within 45 days after the date of settlement of the case. If the plaintiff or other party required to serve and file the request for dismissal does not do so, the court must dismiss the entire case 45 days after it receives notice of settlement unless good cause is shown why the case should not be dismissed."

effect in the family law court. That conclusion is binding as law of the case and under principles of issue prelusion.

Finally, the Joint Stipulation requested the civil law court to *enter judgment* while Rule 3.1385(b) states a court must *dismiss* the entire case upon receiving a request for dismissal. Rule 3.1385(b) does not authorize entry of judgment. The civil law court entered a dismissal with prejudice *against* Edward and did not adjudicate any issues presented by his civil law case.

Edward's motion to set aside and vacate the March 2024 Order was in effect a motion for reconsideration under Code of Civil Procedure section 1008, subdivision (a). Edward did not present any new or different facts, circumstances, or law to justify reconsideration.

In the May 2024 order the family law court noted that "Respondent [Edward] may be vexatious litigant" and "Court will review Civil Code of Procedure [§§] 391.1 and 391.7." We will now review those code sections for Edward's benefit. Section 391.1 defines the term "vexatious litigant" to include a person who "[a]fter a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined." (Code Civ. Proc., § 391.) Under section 391.7, a court may on its motion "enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding justice or presiding judge of the

19

court where the litigation is proposed to be filed." (Code Civ. Proc., § 391.7.)

Edward's repeated, unmeritorious challenges to the validity of the 2018 Order and attempts to relitigate the issues resolved by that order bring him within the definition of a vexatious litigant. While we decline at this time to declare Edward a vexatious litigant, we warn him that further attempts to overturn or circumvent the 2018 Order may well lead us to reach a different conclusion.

DISPOSITION

The March 2024 Order and the May 2024 Order are affirmed. Because Respondent has not appeared and has incurred no costs, recovery of costs is not awarded on appeal.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


DELANEY, J.

20